UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA
    -v-

LUIS FREA
------------------------------------x

JUDGMENT INCLUDING SENTENCE
UNDER THE SENTENCING REFORM ACT

CASE NUMBER: CR-05-4 (ARR)
ANDREW L. CARTER, ESQ
16 COURT STREET, 3rd FL.
BROOKLYN, NEW YORK 11241
Defendant's Attorney & Address

THE DEFENDANT:
**XXX** pleaded guilty to count one of the indictment.
___ was found guilty on counts _____ after a plea of not guilty.
Accordingly, the defendant is ADJUDGED guilty of such count(s), which involve the following offenses:

| TITLE & SECTION | NATURE & OFFENSE | COUNT NUMBER(S) |
|---|---|---|
| 8 USC 1326(a) & 1326(b)(2) | ILLEGAL REENTRY OF A DEPORTED ALIEN. | ONE (1) |

The defendant is sentenced as provided in pages 2 through ___ of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

___ The defendant has been found not guilty on count(s) _____ and is discharged as to such count(s).
___ Remaining counts are dismissed on the motion of the United States.
**XXX** It is ordered that the defendant shall pay to the United States a special assessment of $100.00 which shall be due **XXX** immediately ___ as follows:

It is further ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of residence or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid.

Defendant's Soc. Sec # ____NONE____

Defendant's Date of Birth 11/21/52

Defendant's Mailing Address:

__ABREU STREET, 176__

__SANTO DOMINGO, DOMINICAN REPUBLIC__

Defendant's Residence Address:

____( SAME AS ABOVE )____

_____

____NOVEMBER 3, 2005____
Date of Imposition of Sentence

____ALLYNE R. ROSS, U.S.D.J.____

____NOVEMBER 3, 2005____
Date

A TRUE COPY ATTEST
Date:_____
ROBERT C. HEINEMANN
CLERK OF COURT

By:_____

DEPUTY CLERK

Defendant: LUIS FREA
Case Number: CR-05-4 (ARR)  Judgment - Page    of

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of thirty six (36) months.

**XXX** The Court makes the following recommendations to the Bureau of Prisons: THAT THE DEFT BE HOUSED IN A FACILITY IN THE NEW YORK REGION AND RECEIVE TREATMENT FOR SUBSTANCE ABUSE WHILE INCARCERATED.

___ The defendant is remanded to the custody of the United States Marshal.
___ The defendant shall surrender to the United States Marshal for this district,

    ___ at _____ a.m./p.m. on _____.
    ___ as notified by the Marshal.

___ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons

    ___ before 12:00 noon on _____.
    ___ as notified by the United States Marshal.
    ___ as notified by the Probation Office.

## RETURN

I have executed this Judgment as follows:

_____
_____
_____
_____
_____
_____

Defendant delivered on _____ to _____ at _____, with a certified copy of this Judgment.

United States Marshal

By_____

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of three (3) years.

While on supervised release, the defendant shall not commit another Federal, state, or local crime and shall comply with the standard conditions that have been adopted by this court (set forth on the following page). If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release. The defendant shall comply with the following additional conditions:

1) IF EXCLUDED; DEFT SHALL NOT RE-ENTER THE UNITED STATES ILLEGALLY.
2) DEFT SHALL NOT POSSESS ANY FIREARMS.

___ The defendant shall pay any fines that remain unpaid at the commencement of the term of supervised release.

Defendant: LUIS FREA
Case Number: CR-05-4  (ARR)

Judgment - Page of

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on probation or supervised release pursuant to this Judgment:

1) The defendant shall not commit another Federal, state or local crime;
2) the defendant shall not leave the judicial district without the permission of the court or probation officer;
3) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
4) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
5) the defendant shall support his or her dependents and meet other family responsibilities;
6) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
7) the defendant shall notify the probation officer within seventy-two hours of any change in residence or employment;
8) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
9) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
10) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
11) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
12) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
13) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
14) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

These conditions are in addition to any other conditions imposed by this Judgment.

Defendant: LUIS FREA
Case Number: CR-05-4 (ARR)                                Judgment - Page    of

## FINE WITH SPECIAL ASSESSMENT

The defendant shall pay to the United States the sum of $ 100.00 , consisting of a fine of $ N/A and a special assessment of $ 100.00 .

___ These amounts are the totals of the fines and assessments imposed on individual counts, as follows:

This sum shall be paid ___ immediately
                       ___ as follows:

**XXX** The Court has determined that the defendant does not have the ability to pay any fines, cost of confinement or supervision.

       ___ The interest requirement is waived.
       ___ The interest requirement is modified as follows:

THE COURT: The defendant has requested a non-guideline sentence below the advisory guidelines range. His principal contention is that under the Sentencing Reform Act, specifically subdivision (6) of Title 18, United States Code Section 3553(a), a sentence more lenient than that called for by the now advisory guidelines is necessary to avoid creating an unwarranted sentencing disparity with sentences received by illegal reentry defendants arrested and charged in so-called "fast track" districts.

Fast track programs are originally designed to accelerate dispositions in certain border districts burdened by high volumes of illegal reentry cases. These included the

Northern, Central, Eastern and Southern Districts of California, the Tuscon, Phoenix and Yuma Divisions of the District of Arizona, the District of New Mexico and the Southern and Western Districts of Texas. Although initially operated only in such border districts, fast track programs have since been extended to non-border districts, specifically the districts of Idaho, Nebraska, North Dakota and Oregon.

In all these districts, defendants who agree to enter prompt guilty pleas to illegal entry offenses and forfeit certain other procedural rights are accorded a reduction in sentence which, in some districts, may be substantial. Although some of these districts implement the lower sentence by charge bargains to lesser offenses, most do so by downward departures of one to four offense levels, depending upon the particular district policy and the circumstances of the individual defendant.

Defendant contends imposition of a sentence that fails to account for disparities between fast track and non-fast track districts, such as the Eastern District of New York, subverts the statutory mandate that the sentences imposed consider "the need to avoid unwarranted sentencing disparities," Section 3553(a)(6). Defendant argues when offenders may be distinguished solely by virtue of the district of their arrest, significant differences in sentencing cannot be legitimate.

Quoting Judge Kaplan in his opinion in United States V. Bonnet-Grullon, 53 F. Supp 2d 430, at 435, Southern District of New York, 1999, he observes that "it is difficult to imagine a sentencing disparity less warranted than one which depends upon the accident of the judicial district in which the defendant happens to be arrested."

Counsel also cites the Sentencing Commission's own recognition that fast track programs create a geographical disparity that "appears to be at odds with the overall Sentencing Reform Act goal of reducing unwarranted sentencing disparity among similarly situated offenders." That's the Sentencing Commission's Report to Congress at 67.

The government resists any sentencing adjustment based on a recognition of the differences in the length of sentences imposed in fast track and non-fast track districts. It argues that: (1) disparities arising from such programs are not unwarranted but are rather wholly justified by the law enforcement needs of districts employing them; (2), the charging and departure decisions of prosecutors are committed to a prosecutor's traditional discretion; (3), the programs reduce sentencing disparities in overburdened districts and, (4) granting lower sentences to defendants in non-fast track districts will create disparities within and between those districts as judges will have conflicting opinions concerning their propriety. I am not persuaded by the government's

1  arguments.

2  The claim that the disparities are warranted and
3  necessary because, as the government writes, "absent fast
4  track programs, border districts would be overwhelmed by
5  illegal reentry cases and incapable of effectively prosecuting
6  such offenders" forgets that the term "unwarranted sentencing
7  disparities" is itself statutory language.

8  Accordingly, in construing the meaning of the term,
9  and identifying the criteria to be consulted in determining
10 whether a disparity is in fact unwarranted, one must look
11 first to the language of the statute in which the words are
12 found; that is, the text of 18 U.S. Code Section 3553(a)(6).
13 The statute directs courts in assessing an appropriate
14 sentence to consider, among other factors, "the need to avoid
15 unwarranted sentencing disparities among defendants with
16 similar records and who have been found guilty of similar
17 conduct." As concluded by Judge Kaplan in his oral opinion in
18 United States V. Krukowski, 04-CR-1309 Southern District of
19 New York, July 25th, 2005, this "text of the Sentencing Reform
20 Act strongly suggests that the measure of whether a disparity
21 is warranted depends upon the characteristics of the
22 defendants and their conduct, not overall considerations of
23 law enforcement efficiency or administrative convenience."
24 Finding this reasoning compelling, I conclude that materially
25 different sentences imposed on defendants with similar records

who have been found guilty of similar criminal conduct are not warranted within the meaning of the Sentencing Reform Act regardless of whether certain border districts face challenges caused by court congestion and finite prosecutorial resources.

The government's argument that any adjustment of the disparity improperly thwarts prosecutorial discretion fares no better. No one disputes that the Department of Justice is free to bring charges or not, plea bargain with those charged and agree to downward departures or other arrangements designed to induce guilty pleas. But, and I quote:

"[A] court's reduction of a defendant's sentence based on fast track disparity violates none of those prerogatives. Such a reduction is a sentencing issue and sentencing is primarily a judicial function. Prosecutors decide the charge, but courts must consider Section 3553(a)(6) regardless of the prosecutor's sentencing recommendation."

I have quoted from United States V. Peralta-Espinoza, 383 F. Supp 2d 1107 at 1110, Eastern District of Wisconsin 2005.

Significantly, too, most of these fast track schemes are implemented by sentencing departures rather than charge bargains to lesser offenses. In departure districts, the resulting lower sentences are thus judicially imposed.

Nor does the Second Circuit's opinion in United States V. Bonnet-Grullon, 212 F.3d 692, (2d Cir.2000)

suggest that in the circumstances of this case the Circuit would reach a contrary conclusion. There, the circuit, pre-Booker, addressed the propriety of a departure under the sentencing guidelines. It held that a downward departure based on non-fast track sentencing disparity was not authorized by the guidelines because the circumstances upon which the application was based had been specifically considered and rejected by the Sentencing Commission, thus eliminating any basis for a guidelines departure. The guidelines are now advisory only and no guidelines departure is under consideration with respect to defendant's complaint of an unwarranted sentencing disparity. Rather, in fashioning an appropriate sentence in the case of the defendant before me, I am obligated to consider the provisions Section 3553(a)(6) among the other statutory factors. Contrary to the government's argument, the "fundamental reasoning underlying Bonnet-Grullon" is not that prosecutorial discretion to create disparities by fast track programs trumps the duty incumbent upon judges to adhere to the sentencing statute in fashioning a sentence. Bonnet-Grullon concerned solely the propriety of a downward departure under the then-mandatory guideline scheme.

The government's third argument -- that fast track programs reduce disparities by enabling overburdened districts to punish violators -- is flawed in a manner akin to its

1  earlier contentions. If, as I believe it must be, the central
2  issue is one of statutory construction, the sole question is
3  whether given the language of the Sentencing Reform Act, the
4  sentencing disparities between fast track and non-fast track
5  districts are unwarranted, permitting courts in appropriate
6  circumstances to remedy such disparities. The Act specifies
7  that the disparities to be avoided, those that are
8  unwarranted, are disparities in sentences between defendants
9  who commit similar criminal conduct and have similar records.
10 Under this statutory language, disparities resulting from fast
11 track programs are, in my view, unwarranted within the meaning
12 of 18 USC Section 3553(a)(6) as they do not reflect any
13 differences between defendants' criminal conduct or records.
14 The government's various policy arguments justifying the
15 advantages achieved by such programs does not obscure the
16 clarity of the statutory language or overcome its
17 determinative force.
18         Finally, imposing a non-guideline sentence would not
19 in itself result in unwarranted disparities within this
20 district or between non-fast track districts. Although judges
21 may reach different conclusions in determining whether
22 geographical disparities are warranted or should be remedied,
23 defense counsel is correct that the focus of a court must be
24 on imposing a sentence in this case in line with the majority
25 of illegal reentry cases throughout the country. This is so

because Congress has directed courts to consider nationwide disparities. See United States versus Joyner, 924 F.2d 454 at 460-61, (2nd Cir. 1991) determining that disparities are to be measured by all similarly situated defendants throughout the country and United States V. Toohey, 85 Fed. Appx. 263, (2d Circuit 2004) an unpublished opinion interpreting the Sentencing Reform Act, specifically Section 3553(a)(6) in the same manner as Joyner construed the analysis of sentencing disparities under the sentencing guidelines. The statistics proffered by defendants in this and similar cases support the conclusion that consideration of the disparities between fast track and non-fast track districts advances the noted Congressional mandate, as they indicate that although a minority of districts have fast track programs, the majority of the defendants prosecuted for immigration violations, (presumably, a roughly accurate calculus for the percentage of defendants prosecuted for illegal entry) are sentenced in fast track districts. Accordingly, notwithstanding potential disparities within and between non-fast track districts engaging in comparison of a defendant's sentence with those in fast-track districts implements the Congressional mandate that the proper metric for comparison is a nationwide standard.

Having concluded that fast track program disparities may warrant a sentence adjustment in a non-guideline sentence, I now conclude further, based on an assessment of all of the

1  statutory factors, in light of the facts and circumstances of
2  defendant's case, that such an adjustment is warranted in his
3  case, but only to a very modest extent.
4      I start with the guideline calculation. There
5  appears to be no dispute that the presentence report has
6  correctly calculated defendant's guidelines at level 21,
7  criminal history category 2 calling for a guideline
8  imprisonment range of 41 to 51 months.
9      Turning to the nature and characteristics of the
10 offense, and the history and characteristics of the defendant,
11 Mr. Frea, age 52, is a citizen of the Dominican Republic.
12 He illegally reentered this country following deportation
13 after having been convicted of what has been described in the
14 addendum to the presentence report of the sale of "one tinfoil
15 of cocaine" to an undercover officer. He was sentenced to
16 16 months to four years imprisonment. On July 20th, 1999,
17 having been released on parole after having served 16 months
18 of his sentence, he was deported to the Dominican Republic.
19 From available materials, it is somewhat difficult to
20 correlate the seriousness of defendant's conduct, the sale of
21 what appears to be a small amount of cocaine by one who then
22 had no prior criminal history -- with the severity of the
23 sentence -- 16 months to four years.
24     Upon reentering this country on December 2nd, 2004,
25 defendant used a false passport. Apart from this, however, he

engaged in no further criminality following his reentry. He did, however, admit to several illegal visits to the United States following his deportation, although his presence here on those occasions was never detected.

Counsel argues that his client's repeated visits to the United States (including the illegal ones) support mitigating consideration based on his client's cultural assimilation, but I am inclined to discount this contention, especially in view of the illegality of certain of the visits.

From a number of romantic relationships, defendant has fathered 11 children, one of whom who was extremely ill and recently died. It is clear from the letters presented that he is loved by family members and very much missed by the family, his girlfriend and the children who reside in the Dominican Republic. The circumstances of these relationships, however, are not such as to produce a substantially mitigating influence on his sentence.

It appears that defendant does have a reasonably stable work history, having worked as a printer for most of his life. Finally, the addendum to the presentence report sheds light on the fact that defendant has a ten-year history of cocaine abuse and admitted to selling drugs to support his habit which costs him between $50 and $80 a day.

Albeit unclear, the picture that emerges is of a defendant with a serious drug addiction problem who committed

a serious offense calling for a substantial sentence to provide just punishment, promote respect for the law, afford adequate deterrence and ensure the safety of the public.

On this record there appear to be no or few factors substantially mitigating the seriousness of his crime. On the other hand, there are certainly no facts substantially aggravating its severity. In my view, there is, therefore, no reason to disregard the fast track disparity entirely, nor is there any reason to give it substantial weight.

Of course, the extent of a disparity between the sentence imposed on the defendant and those imposed in fast track districts correlates with the extent of harm to the policy embodied in 18 USC Section 3553(a)(6). I turn, therefore, to counsel's calculation of the sentencing ranges the defendant would face in the fast track districts. It is true that defendant's guidelines range, 41 to 51 months, exceeds the ranges in all of the fast track departure districts, but the disparity is, in fact, not so great. In two such districts, the range is 27 to 33 months. In two others, it is 30 to 37 months. In four it is 33 to 41 months and in one it is 37 to 46 months.

Having considered defendant's advisory guidelines, the fast track disparity and all of the other sentencing factors enumerated in Section 3553(a), I conclude that an appropriate sentence in defendant's case is as follows.

            I sentence Mr. Frea to the custody of the Attorney
General for a period of 36 months to be followed by a
three-year period of supervised release with special
conditions that if excluded he not illegally reenter the
United States and I prohibit possession of a firearm.
            I make a finding that he is unable to pay a fine,
but I will impose the mandatory $100 special assessment and I
strongly recommend that he be designated to an institution
where he will receive treatment for his substance abuse
problem.
            I would in fact recommend the 500 hour program,
although understanding that he could not receive six months
credit for that at the end of his period of imprisonment.
            I take it there are no open counts; is that right?
            MS. RYAN:    No, it's a one-count indictment.
            THE COURT:    Anything further?
            MR. CARTER:    Just one minor thing.  Respectfully,
Judge, consistent with your recommendation for drug treatment,
we would respectfully request that your Honor also recommend a
facility close to the New York area.
            THE COURT:    I will.  Is the drug treatment
important enough or does he just want to be in New York?
            MR. CARTER:    Being close to his family is more
important.
            THE COURT:    I will recommend a designation in the

1 New York area and insofar as is consistent with that
2 designation where he will receive the maximum possible drug
3 treatment.